# Matthew C. Johnston

*ATTORNEY AT LAW, LLC*

19 Park Place, Flanders, New Jersey 07836

Matthew C. Johnston*  
Joseph W. Peters  
+Member of N.J., ME & MA. Bar  
*Member of N.J., MN & Washington, D.C. Bar

(973) 584-5402  
Fax (973) 252-7200

http:/law-offices-of-matthew-c-johnston-esq-llc.com

Barry M. Johnston (1933-2014)  
Elizabeth L. Bancroft+  
Of Counsel

E-mail: realestatelawyers@att.net  
lawoffices19@att.net  
njbankruptcylaw@att.net  
shortdepartment@att.net  
modernlaw@att.net

September 10, 2017

Honorable Michael B. Kaplan  
United States Bankruptcy Court  
Clarkson S. Fisher US Courthouse  
402 East State Street  
Trenton, NJ 08608

    Re:    Louis Farina  
            13-18864  
            Opposition to Motion for award of Post-Petition Attorney's Fees.

Dear Judge Kaplan:

    Please accept this letter brief, in lieu of a formal brief, in Opposition to Creditor, Hilltop Farm Condominium Association's ("Hilltop") Motion for an award of Post-Petition attorney fees and other recoverable assessments, returnable September 19, 2017.

### *Introduction.*

    The issue before the court is uncomplicated and has been made necessary as a result of: (1) a failed, attempt by Hilltop to obtain relief from the Automatic Stay in an improper effort to collect post-petition and post-confirmation attorneys fees and costs, dating back to 2013, through the New Jersey State Courts; and (2) an agreement by Your Honor to make a dispositive determination as to the appropriateness of said legal fees and costs, during a hearing for sanctions

1

against Hilltop's counsel. The issue of sanctions was voluntarily dismissed, without prejudice, as a result of Your Honor agreeing to adjudicate the instant motion and to bring finality in a long-held dispute between Debtor and Hilltop.

As all of the key legal arguments refuting Hilltop's claim for contractual authority to collect the fees in question have previously been presented to the court, both in prior briefs and during oral argument at the previous two motions, Plaintiff hereby incorporates by reference the statement of facts and legal arguments in Plaintiff's Opposition to Hilltop's Motion for Relief from Stay and the Brief in support of Plaintiff's Motion for Sanctions against Crew Schielke.

### *Post-Petition legal fees are simply not recoverable by this Creditor.*

Generally speaking, in a bankruptcy, attorneys fees are not recoverable to most creditors. The Supreme Court has made it clear that in order for a creditor to recover attorneys fees, there must be a either a contractual obligation between a debtor and a creditor for same or a statutory right to same: "The courts have recognized two exceptions to [the "American Rule"[1] (1) where statutory provisions exists that provide for the fee allowance, or (2) where a contractual provision allocating attorneys fees exists." See, Travelers Casualty & Surety Co. v. Pacific Gas & Electric, Co., 127 U.S. 1199, 1203 (2007)

As to New Jersey Statutory Law, with regard to community residential associations, attorneys fees sought to be recovered must be (1) reasonable and (2) a part of the governing documentation. Specifically, N.J.S.A. 46:8B-21 (a) of the New Jersey Condominium Act mandates the following:

> The association shall have a lien on each unit for any unpaid assessment duly made by the association for a share of common expenses or otherwise, including any other moneys duly owed by the association, *upon proper notice to the appropriate unit owners, together with interest thereon, and if authorized by the master deed or bylaws, late fees, fines and reasonable attorneys' fees...* (emphasis added).

The relevant governing documents related to attorneys fees in this matter are found in Hilltop's Bylaws, Article V, Section 10. In them, as is common for most homeowner's associations, Hilltop's Bylaws mandate that general litigation fees are to be borne by all of the Unit Owners, not an individual Unit Owner. Moreover, when an individual unit owner defaults,

---

[1] The "American Rule" which is followed in New Jersey generally holds that each party will be responsible for its own litigation costs, including attorney's fees. See In Re Brooks, U.S. Bankruptcy Court, D. New Jersey, April 12, 2007 (citing Smiriglio v. Hudson United Bank, 98 Fed. Appx. 914, 915 (3d Cir. 2004)).

2

Hilltop's Bylaws limit the amount of attorneys fees to be charged to an individual unit owner to 20% of the gross amount due plus reasonable costs to file a lien:

> The Board at its option shall have the right in connection with the collection of any Common Expense assessment, or other charge, to impose a late charge of any reasonable amount and/or interest at the legal maximum rate permitted by law for the payment of delinquent real estate taxes, if such payment is made after a date certain stated in such notice. <u>In the event that the Board shall effectuate collection of said assessment or charges by resort to counsel, and/or the filing of a lien, the Board may add to the aforesaid assessments or charges a sum or sums of twenty (20) percent of the gross amount due as counsel fees, plus the reasonable costs for preparation, filing and discharge of lien,</u> in addition to such other cost as may be allowable by law.
>
> (a) In the case of any action or proceeding brought or defended by the Association or the Board pursuant to the provisions of these By-Laws, <u>the reasonable costs and expenses of preparation and litigation, including attorneys fees shall be a Common Expense allocated to all Unit Owners</u>. <u>See</u>, <u>Hilltop's Brief</u>, Pg. 4. (Emphasis Added)

The language allocating attorneys fees in this document is clear, concise and unambiguous.[2]

When it comes to the recovery of Post-Petition legal fees in any matter, Your Honor should ask two questions: (1) is the creditor contractually or statutorily entitled to such legal fees? and (2) if the creditor is entitled to legal fees, are they a reasonable and necessary administrative expense under the Bankruptcy Code? <u>See</u>, <u>Generally</u>, <u>Travelers Casualty v. Pacific Gas and Electric</u>, 127 <u>U.S.</u> 1199 (2007); 11 <u>U.S.C.</u> 503(a) & (b) (4).

Here, the answer to the first question is "no". As Your Honor correctly pointed out during oral argument for sanctions, the contractual right of Hilltop to collect legal fees from an individual unit owner is specific. It is indisputable that Hilltop's Bylaws control the amount of legal fees a unit owner can be charged. In this regard, when a unit owner is in default of Common Expense Assessments, Article VI, Section 10 is clear on the amount of legal fees

---

[2] While it is Debtor's contention that the relevant Bylaws of Hilltop are clear and unambiguous, in the event Your Honor finds them to be ambiguous or unclear in any way, Debtor proffers Your Honor take judicial notice of the long-held equitable principle that an ambiguous term in a document shall be interpreted in favor of the non-drafting party.

which can be charged to a unit owner: 20% of the gross amount of the debt owed to the association.

Contrary to Hilltop's interesting proposition that the "plain language, context, and other pertinent [un-cited] provisions" of the Hilltop Bylaws and Master Deed allow for, literally, unlimited legal fees to be levied against a unit owner, there is nothing written in the Bylaws creating such authority. Yet, Hilltop has taken this position.

But that is not what the contract, i,e,, the Bylaws and Master Deed state - they allow for a 20% levy of attorney fees to be added to the judgment amount sought. That's it. Put simply, there is absolutely no contractual right for Hilltop to charge more legal fees to an individual unit owner under any other circumstance, notwithstanding the "injustice" Hilltop's counsel implies would be created in not having said ability.

And this makes sense. This is a community of property owners. The community needs general counsel for day-to-day legal matters and for collection activities if it deems same is necessary. The advice Hilltop obtains is for the community; the collection activity is a choice, not a mandatory requirement, and same is usually decided upon via a cost-benefit decision, just like many people and businesses. Sometimes the cost to collect outweighs the benefit of recovery. Here, the choice must be made based upon the ability to recover only legal fees which equate to 20% of the debt owed.

If one of the property owners defaults at Hilltop, the choice to incur legal fees to engage in collection activities must be made with the understanding that the community will pay the legal fees to do so and with the understanding they will be limited in their ability to mitigate losses to the community. Thus, like choosing a landscaper or whether to replace roofs, the Hilltop Board must evaluate the circumstances to make a choice for the community. The same evaluation must be made when the Hilltop Board chooses whether to sue a third party - they may or may not get the legal fees back, but they absolutely will have to pay their counsel for services rendered and those fees are shared by the community. The same theory applies to defaulting unit owners.

Here, by 2012, the Debtor had been in default on his monthly assessments of $190.00 for approximately one and one half years. The amount, even with late fees of $25.00 totaled $3,870.00. The only legal fees which should have been charged to Debtor were (1) $774.00 and (2) the "reasonable" costs to prepare and file a lien.[3]

Notwithstanding what the Bylaws allowed for, at the time Debtor filed his bankruptcy, Hilltop claimed it was owed $13,289.73. An additional $3,760.00 was added to this amount in

---

[3] This issue has never been adjudicated with regard to the rights of the Debtor. It should have been evaluated by a New Jersey Court in 2012, but Debtor did not get notice of the suit against him, he failed to defend himself as a result and a default judgment was levied against him. Because Hilltop refused to allow the matter to be reopened, and continued to charge legal fees to Debtor to stop him from having a hearing, the instant Chapter 13 filing was made to stop the proverbial "bleeding".

order to confirm the Plan. A total of $17,049.73 has been charged to Debtor to date - and now Hilltop is seeking <u>an additional</u> $12,836.00 plus fees for this action. In short, from a debt of $3,870.00, Hilltop is seeking a total of $29,885.73 and more.[4]

If Hilltop desires to go beyond a 20% threshold of legal fees charged to a defaulting individual unit owner, they must change the Bylaws. As it stands, that is the extent of fees the Debtor should have been charged - and he has paid far more than the proper amount years ago.

As such, Debtor contends that the recovery of these additional attorney fees are neither reasonable, nor authorized by either contract or statute.

### *The legal fees sought are not a reasonable administrative expense.*

In the unlikely event Your Honor were to deem the Hilltop Bylaws and governing documents to allow for unlimited attorney's fees to be charged to an individual unit owner, even a cursory reading of the legal bills presented in Exhibit "C" of Hilltop's brief make it clear that same are not reasonable or necessary administrative expenses pursuant to the Code.

Bankruptcy is a "fresh start". While Creditors are occasionally granted costs they incur to protect, *i.e.*, administer the payment or protection of debt they are entitled to in a bankruptcy, 11 U.S.C. §503 (a) and (b) (4) is clear that same must be "reasonable" and same is only for "necessary" expenses related to said debt. While there are a myriad of cases related to both reasonableness and necessary determinations in complicated situations, in this case the matter is very simple.

Hilltop has a secured claim. The claim was included in the plan(s) without modification. If Hilltop had done nothing, they would be reimbursed for the entire secured claim through the plan. Debtor, since the plan(s) was confirmed, has made all his plan payments and all his common assessment monthly payments in a timely manner. Debtor has not violated the Hilltop common rules during the plan period. In short, Debtor has done nothing to cause Hilltop to incur any additional attorney fees.

Notwithstanding this, Hilltop's counsel has been apparently intricately involved in the day-to-day monitoring and supervision of a secured claim. This, in itself, is very unusual, as there was nothing necessary to recover the secured claim through the plan(s). Clearly, most of these charges are for matters which are ministerial in nature - and certainly objectively unnecessary.

---

[4] This is the outright absurdity I detailed in my Certification to the Motion for sanctions. Despite having no contractual authority for most of the fees Debtor has paid, Hilltop and/or counsel continue to charge fees which, apparently, will never end. Because of various circumstances, a State judge has yet to rule on this issue - and this is why Debtor has requested Your Honor do so to stop the continuation of this debtor's "nightmare".

This is indisputable. In fact, Hilltop's counsel has admitted he has charged Hilltop to "monitor" Debtor's bankruptcy. See, Certification of Schielke, Paragraph 21. While he claims he felt it was necessary to "keep abreast" of "multiple issues" which "suggested" a dismissal was possible, nothing he was "monitoring" would have affected Hilltop's position or the secured debt they are entitled to. Ibid. The subjectiveness of the words Counsel has used further illustrate the absurdity of the legal fees sought to be charged to Debtor. These are the actions of a social worker, a nervous parent or a stalker - not a creditor's attorney.

Even if Hilltop requested the "monitoring" of Debtor's bankruptcy, this would have to be deemed a preference, not a necessity, under any objective analysis. As such, Hilltop has an obligation to pay the fees for choosing to "monitor" and the like, not the Debtor.

If there is any doubt as to the unnecessary nature of counsel's "monitoring", had any of the "multiple instances" which "suggested" a dismissal was possible actually happened - which did not - Hilltop would have been in an equal or better position than they were already in. It is clear that Hilltop wanted to remove themselves from the "restraints" of the Automatic Stay, stating they were "waiting" for same to take "action" against Debtor in State court, and when this did not happen, they made a motion for said relief. See, Certification of Elizabeth Bancroft, Esq. dated May 24, 2017, Paragraphs 18 &19.

Thus, the reality is that Hilltop's counsel was "monitoring" solely for an opportunity to take advantage of the Debtor, hoping he would "screw up". Ibid. Under the circumstances it would be patently unfair to allow Hilltop to recover any fees related to these activities, as none of them affected, in any way, the secured debt Hilltop was entitled to. Obviously, also, none of these actions were necessary in any objective sense.

It would also appear that Hilltop's counsel has charged Hilltop for not only supervising the secured claim, but also to attempt to aggressively collect upon the secured claim and recover more legal fees by circumventing the bankruptcy protections. This is, frankly, unheard of as it relates to the actions of a secured creditor of a Chapter 13 - when absolutely nothing has changed since the plan(s) confirmation. If nothing else, by the amount of billings set forth in Exhibit "B", it appears Debtor has continuously been an object of significant interest to Hilltop and Hilltop's attorney - a very curious and questionable fact.

Hilltop, obviously, believes it can charge Debtor for anything their lawyer does in relation to this individual unit owner - anything. If a board member asks counsel a question related to Debtor - charge. Reviewing the file of Debtor - charge. Reading a letter from ... anybody - charge. Filing and losing an inappropriate motion to vacate the Automatic Stay - charge. Defending one's attorney against sanctions - charge. Filing a motion for more fees - charge. Perhaps this rhetoric is unfair? A detailed review of Exhibit "B" to Hilltop's Brief makes the point clearer than any of my admittedly, sarcastic rhetoric could.

In order to evaluate the appropriateness of Hilltop's attempt to charge Debtor for these legal fees, respectfully, the question should be threefold: (1) did Debtor do something to cause the legal fee to be created? (2) Was the activity charged really necessary or superfluous? and (3) would Hilltop charge the same legal fee to another individual unit owner?

Presuming Hilltop had a contractual right to charge Debtor for such legal fees - which it does not, it is clear that none of these legal fees were necessary to protect Hilltop's debt. Debtor has been paying his plan payments and he has been paying his monthly common fees to Hilltop. Debtor has done nothing since the filing of the bankruptcy to violate Hilltop's rules or create the need for legal advice or defense. If Hilltop's board had a question about the secured debt, the Debtor or a general question about bankruptcy provisions this should be considered general counseling - not a billable event to be charged to Debtor.

Therefore, the only logical way to ascertain legitimate charges are the three questions above.

First, did the Debtor do anything to cause Hilltop to require legal advice or to become aggressive in recovering/protecting its secured claim? Certainly, had the Debtor violated the Bylaws of Hilltop or caused a problem which placed the secured claim in jeopardy it may be reasonable to charge him directly. But, none of the charges relate to those types of circumstances.

Hilltop's counsel asserts his services were made necessary by "multiple" Trustee motions to dismiss, even though none of same were granted[5], and because Debtor's counsel, at one point, withdrew from representing the Debtor. <u>See, Certification of Schielke</u>, Paragraphs 23 &24. But counsel fails to explain why his services were necessary- to read the motion papers? To "monitor" the motions? Nothing he did was required of him or necessary to administer the secured claim of Hilltop.

The motions by the Trustee and by this office had nothing to do with Hilltop or the protection of Hilltop's secured claim. There was nothing required of counsel in these regards. Had he done nothing, nothing would have changed. The secured claim was never in question, and whether the Debtor has an attorney or not does not affect, in any objective manner, the secured claim of Hilltop. The reality is that Hilltop's counsel was, again, "monitoring" and "hoping" to get the Debtor back to State Court.

Second, even if it could be shown that Debtor's actions did cause Hilltop to require the services of an attorney, were the charges being sought objectively necessary to protect Hilltop's debt? Hilltop's counsel has failed to make any argument for this. This is because there was no action necessary to protect Hilltop's secured claim and debt.

---

[5] Except for the latest one, which did result in a dismissal due to a former attorney accidentally missing a return date for her objection, after resolving all of the Trustee's concerns. This mistake was rectified, and the matter was reinstated this month.

Indeed, most of these charges are regular daily tasks involved in one's "monitoring" of an ongoing bankruptcy case. Some even relate to aggressive, unnecessary collection actions such as trying to remove the Automatic Stay without cause. Hence, the reality is that if none of this had been done by counsel, Hilltop's debt would still be protected and would still be paid through this bankruptcy.

The other reality is a significant amount of these charges relate to unnecessary, strange strategic attempts to recover debt by alternative means. While Hilltop can choose to pay an attorney for unnecessary activities, Debtor should not be responsible for same.

Lastly, and not unimportantly, would Hilltop charge any other individual unit owner who is not under Bankruptcy protection for any of these fees - of course not. If Hilltop does not charge other unit owners legal fees for these tasks, how can they charge this unit owner? This is important, as the Automatic Stay mandates that Debtor is treated equally to the other individual unit owners as his pre-petition debt is deemed "paid" through the plan and he was supposed to be given a fresh start.

Thus, unless Debtor has done something to create new debt to Hilltop, such as violating the Bylaws or not paying his monthly assessments, all of these charges should have been deemed common pursuant to the clear language within the Bylaws of Hilltop. Obviously that is not what has occurred here.

Rather, what has occurred here, is that Hilltop's lawyer, unknown to Debtor or Debtor's counsel, has been constantly creating unnecessary legal fees in the guise of being "related" to the Debtor's plan(s) since the plan(s) inception. Again, if Hilltop agrees with these fees, so be it, but they are common charges, not attributable to the Debtor or Debtor's actions.

To make the reality of this clear, if Your Honor decides that these charges are reasonable and appropriate under the circumstances, the result will be that the Debtor, by absolutely no fault of his own, will owe almost as much debt to this Creditor as he did when he filed for Bankruptcy protection - again, a total of $17,049.73 has been charged to Debtor to date and now Hilltop is seeking <u>an additional</u> $12,836.00 plus more fees to come for this action.

Your Honor is granted an infinite amount of discretion in these circumstances. This Debtor has done nothing but pay his plan payments and pay his fees to Hilltop for over four years. Hilltop has every right to pay an attorney to do whatever they think is appropriate, but surely none of these charges should be paid by the Debtor, as he has done nothing to cause them to be created.

All of the charges identified in Exhibit "B" are ministerial in nature, were for "monitoring" or were fees for actions taken at the behest of Hilltop to attempt to aggressively and improperly engage in collection activities. These are not "normal" administrative tasks which protected Hilltop's secured claim, nor should any be charged to a Debtor who has neither been in default of the plan nor in default of his monthly payments to Hilltop.

As such, Debtor contends that the recovery of these additional attorney fees are neither reasonable, nor contemplated by 11 U.S.C. §503 (a) and (b) (4).

### *The Doctrine of Laches applies as this was filed in an untimely manner.*

Even if Your Honor determines that Hilltop's Bylaws provide for unrestricted legal fees to be charged to Debtor, and that the charges identified in Hilltop's request are reasonable and necessary fees, Debtor objects to the award of post-petition and post-confirmation attorneys fees under 11 U.S.C. §362 and §502, and pursuant to the doctrine of Laches.

In order to effectuate fairness and equity in bankruptcies, 11 U.S.C §362, §502 and §503 (a) contemplate timely filings. If a request for expenses is made in an untimely manner, the cause of the delay must be cited and must be objectively reasonable. See, Generally, 11 U.S.C. §503(a). These Federal rules are based on the equitable principle of Laches.

Laches arises from "the neglect for an unreasonable and unexplained length of time . . . to do what in law should have been done." Lavin v. Hackensack Bd. of Education, 90 N.J. 145, 151 (1982) (citing, Atlantic City v. Civil Service Commission, 3 N.J. Super. 57, 60 (App. Div. 1949)).

The doctrine bars relief when the delaying party had ample opportunity to bring a claim, and the party invoking the doctrine has acted in good faith. See, Knorr v. Smeal, 178 N.J. 169, 181 (2003); Lavin, *supra*, 90 N.J. at 152. See, also, Atlantic City, *supra*, 7 N.J. Super. at 60, wherein the court succinctly stated:

> Laches in a general sense is the neglect, for an unreasonable
> and unexplained length of time, under circumstances permitting
> diligence, to do what in law should have been done. More
> specifically, it is inexcusable delay in asserting a right . . .

With this in mind, the period of time in which laches can be raised as an equitable defense is flexible and not fixed. Lavin, at 151.

There are three factors to be considered by a court when the doctrine of laches is raised: (1) the length of the delay, (2) the reason for the delay, and (3) how the circumstances of the parties have changed over the course of the delay. Knorr, at 181. As the court stated in Lavin,

> The length of the delay alone or in conjunction with the other
> elements may result in laches. It is because the central issue
> is whether it is inequitable to permit the claim to be enforced,
> that generally the change in condition or relations of the parties
> coupled with the passage of time becomes the primary
> determinant. That is why some courts have stated that the mere

lapse of time is insufficient, thought, as indicated above,
that is an overstatement of the principle. Inequity, more often
than not, will turn on whether a party has been mislead to his
harm by the delay. Id., at 152-53.

Here, the facts scream for laches to apply. Pursuant to a Consent Order entered into by the parties in November, 2013, Hilltop was required, if they believed to be owed additional fees, to make an appropriate motion or application before the court. The clear meaning of the Consent Order was that Hilltop, if it felt it necessary, would make appropriate and timely application to the court for fees it felt were due and owing. No such application was made for more than four years.

Rather, in April 2017, an application in the form of a Motion for Relief from Stay was made but, as was discussed in prior motions, it was made with an intent to remove the Debtor from the protection of the bankruptcy code. This motion was denied as improper.

Notwithstanding an open order allowing for appropriate subsequent legal and other fees to be requested through proper methods, Hilltop allowed over four and a half years to pass - without reasonable justification - before doing anything. But, the reality is worse - Hilltop, or its counsel, <u>purposely</u> waited "hoping" for Debtor to "screw up". See, <u>Certification of Elizabeth Bancroft, Esq. dated May 24, 2017</u>, Paragraphs 18 &19.

Worse, only at the prodding by this office, not only did Hilltop fail to properly apply for fees, they aggressively attempted to thwart Debtor's bankruptcy protection by requesting a removal of the Automatic Stay, so as to seek improper post-petition and post-confirmation legal fees through State courts. Again, all of this was done over 4 years into the plan.

Moreover, Debtor had absolutely no idea these fees were being charged and "held" back. At no point during the last four years did Hilltop either provide a notice to Debtor of fees, nor did Hilltop provide a yearly accounting of fees. Due to a suspicion of Debtor's counsel, requests were made to Hilltop and Hilltop's counsel to verify if Hilltop intended to seek any additional fees. As a result of this request, it was discovered that Hilltop considered itself entitled to vast amounts of new attorneys fees - by way of an improper Motion for Relief of Stay.

Additionally, and admittedly less offensively, Hilltop claims that it is entitled to late fees from October, 2013 through today, at the rate of $25 monthly. This is objectionable for two reasons:

First, upon default of his monthly assessments, Debtor was subject to accelerated fees. But, Hilltop had been aware they could assess same throughout the last four and a half years - and failed to do so.

Second, had the issue been raised in a timely and proper manner, Debtor would have objected to the acceleration of late fees beyond 2013, as the Automatic Stay mandates that Debtor is to be treated as not being in default, as long as he makes timely plan and future common fee assessment payments.

Your Honor should now have a full appreciation of how Hilltop and its counsel has acted with regard to Debtor. The reality is that this was not an honest mistake; this was a purposeful, tactical attempt to place Debtor at an unfair advantage - again. If Hilltop had simply "forgotten" to make a request in a timely manner, or if it had not had counsel to advise them to do so, perhaps equity would allow the request to be made now.

But the undeniable inaction and actions by Hilltop, buttressed with the statements made by Hilltop's counsel, make it clear no mistake was made in this matter. Rather, they wanted to "wait for" Debtor to "screw up". Only after the proverbial "pressure" was put on Hilltop to account did they take action - by improperly trying to remove the Debtor from his protections and prosecute him in State court for these fees and attorneys fees.

Allowing Hilltop to accelerate late fees four years later, or to find Debtor liable for any of the attorney fees proffered by Hilltop to be attributable to Debtor will significantly change the relationship between the parties.

The Debtor is paying into a Chapter 13 bankruptcy plan which is almost at an end. Hilltop is being paid in full for the questionable judgment that it obtained against the Debtor. If Your Honor were to find that any of the post- petition fees are allowed, Debtor will not have the benefit of spreading said fees out. This will significantly harm the Debtor, who has been acting in good faith, paying his monthly expenses to Hilltop and making his payments to the Trustee.

Respectfully, in this regard, Your Honor should be guided by the Lavin court: "It is because the central issue is whether it is inequitable to permit the claim to be enforced, that generally the change in condition or relations of the parties coupled with the passage of time becomes the primary determinant." Lavin, Supra, at 152-3.

Under all of the circumstances, the Doctrine of Laches clearly applies to this matter: Hilltop purposely "sat" on legal fees for over 4 years, as well as accelerated late fees, both of which it now wishes to collect as post-petition, post-confirmation fees - and only because this office requested Your Honor resolve the matter now. Clearly, Hilltop would have preferred to wait even longer.

This was not an accident or an innocent mistake. The facts herein and equity make rejecting Hilltop's request easy, as they have no justifiable explanation for "...the neglect for an unreasonable and unexplained length of time . . . to do what in law should have been done." Lavin, 151.

11

Debtor, respectfully requests the court reject Hilltop's request for all fees under the equitable principle of laches.

## *Conclusion.*

For the reasons set forth more fully above, Debtor contends that the recovery of additional attorney fees are neither reasonable, necessary, nor allowed by contract or statute, and that the recovery of accelerated "late" fees would be inequitable to charge to Debtor at this late stage of his plan.

Debtor respectfully requests Your Honor: (1) deny the entirety of Hilltop's current request for attorney fees and accelerated late fees; (2) declare, as a matter of law, that Hilltop was limited to recover as attorneys fees 20% of the gross amount due from Debtor's delinquency; (3) preclude Hilltop from charging Debtor for any attorneys fees for the instant matter or any previous matter related to this, or the defense of the motion to levy sanctions against Hilltop's counsel; and (4) affirmatively retain jurisdiction on any other future post petition and post-confirmation fees which Hilltop attempts to levy against Debtor related to this Bankruptcy.

Very Truly Yours,

Matthew C. Johnston, Esq.

9/10/17